UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GREGORY MADDEN,
   Plaintiff,

v.

RITTAL NORTH AMERICA, LLC,
   Defendant.

C.A. No. 22-030-JJM-LDA

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Before the Court is Defendant Rittal North America, LLC's ("Rittal") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) (lack of subject-matter and personal jurisdiction, respectively). ECF No. 14. Plaintiff, Gregory Madden, responds with additional allegations in an affidavit and extensive documentation on Rittal's business activities in Rhode Island. *See* ECF No. 19. For the reasons below, the Court DENIES Rittal's Motion to Dismiss. ECF No. 14.

### I.   BACKGROUND

Mr. Madden filed this suit alleging that Rittal illegally discriminated against him on the basis of his age in violation of Age Discrimination in Employment Act of 1967 and corollary Rhode Island state statutes. *See* ECF No. 1 at 1. Although Rittal has not maintained an office in Rhode Island, Mr. Madden worked for Rittal out of his residence in Rhode Island. ECF No. 19, Ex. 3 at 3-4, ¶ 29; ECF No. 14, Ex. B at 2, ¶ 18. Additionally, Mr. Madden alleges that he was interviewed and hired by Rittal

while he was residing in Rhode Island. ECF No. 19, Ex. 3 at 2, ¶ 11. He alleges that he was mailed or emailed several hiring documents to his residence in Rhode Island. *Id.*, ¶¶ 13-14. Mr. Madden continued to communicate with Rittal's agents from Rhode Island, even meeting with an agent of Rittal in Rhode Island on at least one occasion. *Id.* at 4-5, ¶¶ 33, 37. Further, Mr. Madden alleges that he was informed by telephone or Zoom meeting, while he was at his Rhode Island residence, that his region had been eliminated and that Rittal would no longer continue to employ him. *Id.* at 5, ¶ 39.

Rittal counters that it did not mandate that Mr. Madden work in Rhode Island. ECF No. 14, Ex. B at 2, ¶ 19. Additionally, Mr. Madden was the only Rittal employee in Rhode Island and, after his employment with the company ended, it no longer has any employees in the state. *Id.*, ¶¶ 18, 20. Further, Rittal alleges that it neither manufactures goods nor does business in Rhode Island, and any sales to the state are *de minimis* and made through passive channels. *Id.*, ¶¶ 10-16.

## II.   STANDARD OF REVIEW

### A.   Personal Jurisdiction

"To hear a case, a court must have personal jurisdiction over the parties, that is, the power to require the parties to obey its decrees." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002) (internal quotation marks omitted) (quoting *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 35 (1st Cir. 1999)). Plaintiff carries the ultimate burden of proving that all the necessary elements have been met for the Court to exercise personal jurisdiction over a

defendant. *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016) (citing *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007)). Although, Plaintiff need not "plead facts in its complaint sufficient to show personal jurisdiction." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 123 (1st Cir. 2022) (citing *Baskin-Robbins*, 825 F.3d 28 at 34). The Court "take[s] the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts and account[s] for undisputed facts put forth by the defendant." *Id.* at 119-20 (internal quotation marks omitted) (quoting *Baskin-Robbins*, 825 F.3d at 34). However, the Court will not "credit conclusory allegations or draw farfetched inferences." *Vaportherm, Inc. v. Santiago*, 38 F.4th 252, 257 (1st Cir. 2022) (internal quotation marks omitted) (quoting *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)).

    B.    **Subject-Matter Jurisdiction**

Because Federal jurisdiction is limited, "[i]t is to be presumed that a cause [of action] lies outside this limited jurisdiction … and the burden of establishing the contrary rests upon the party asserting jurisdiction…." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Likewise, "[t]he pleading standard for satisfying the factual predicates for proving jurisdiction is the same as applies under Rule 12(b)(6)—that is, the plaintiffs must state a claim to relief that is plausible on its face." *Lab. Rels. Div. of Constr. Indus. of Massachusetts, Inc. v. Healey*, 844 F.3d 318, 326-27 (1st Cir. 2016) (citations omitted) (internal quotation marks omitted).

Additionally, the Court must "construe the [c]omplaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences." *Hajdusek v. United States*, 895 F.3d 146, 148 (1st Cir. 2018) (citation omitted). However, "[w]hile the [C]ourt generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion, such as the one in this case." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) (internal citations omitted).[1] Further, when subject-matter jurisdiction exists in a case of original jurisdiction, the Court retains supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

## III.  DISCUSSION

Rittal challenges the Court's jurisdiction to hear this matter on two separate grounds: lack of personal jurisdiction and lack of subject-matter jurisdiction. *See* ECF No. 14 at 1-2. Neither argument is persuasive. The following sections address each challenge.

### A.  Personal Jurisdiction

While the Court does not exercise general personal jurisdiction over Rittal, the company's contacts with Rhode Island are sufficient to warrant the Court's exercise of specific personal jurisdiction.

---

[1] Supplementing the briefs with extrinsic materials also does not necessarily convert a motion to dismiss for lack of subject matter into a motion for summary judgment. *Id.*

1. General Personal Jurisdiction

Mr. Madden does not appear to seriously challenge that the Court lacks general personal jurisdiction. *See* ECF No. 19. Normally, general personal jurisdiction exists in the state(s) where a company is organized and maintains a principal place of business. *Daimler, A.G. v. Bauman*, 571 U.S. 117, 137 (2014) (citations omitted). For Rittal, Rhode Island satisfies neither case. ECF No. 14, Ex. B at 1, ¶¶ 5-6. In rare instances, general personal jurisdiction can also exist absent one of these two cases. *See Daimler*, 571 U.S. at 138-39 (describing this alternative basis for general personal jurisdiction). However, Mr. Madden has made no showing that Rittal's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in" Rhode Island, and thus subject to general personal jurisdiction here. *Id.* (internal quotation marks omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919). Mr. Madden alleges that Rittal possesses—or at least possessed while he worked there—a Rhode Island tax ID number, employed and communicated with persons in the state, and engages in significant business in the state. *See* ECF No. 19 at 11-16 (detailing all Rittal's alleged connections to Rhode Island). Rittal disputes Mr. Madden's characterization of these allegations. *See* ECF No. 14, Ex. B (providing Rittal's own account of the relevant facts).

Nevertheless, even assuming all the facts alleged by Mr. Madden, these facts do not amount to the same nexus that Rittal maintains with other states, such as Illinois where it maintains its principal place of business (*Id.* at 1, ¶ 6). Merely

operating a substantial business in a state cannot be described as the company's "nerve center" the same way choosing to locate the company's headquarters or primary operations in a state can. *Hertz Corp. v. Friend*, 559 U.S. 77, 81 (2010) (internal quotation marks omitted). Mr. Madden has failed to show that Rittal maintains continuous and systematic operations in Rhode Island such that it could be sued on claims that arose from facts that are separate from those described here. *Daimler*, 571 U.S. at 138-39. The Court, therefore, lacks general personal jurisdiction over Rittal.

2. **Specific Personal Jurisdiction**

The facts outlined above, however, are sufficient for the Court to exercise specific personal jurisdiction over Rittal consistent with the Due Processes Clause of the Fourteenth Amendment. To comport with due process, Mr. Madden must demonstrate three conditions: 1. The claim "directly arise[s] out of, or relate[s] to," Rittal's activities in Rhode Island; 2. Rittal has purposefully availed itself "of the privilege of conducting activities in [Rhode Island] ... thereby invoking the benefits and protections of [the] state's laws and making the [company's] involuntary presence before the state's courts foreseeable; and 3. The Court's exercise of jurisdiction is reasonable under the *Gestalt* factors. *Baskin-Robbins*, 825 F.3d at 35 (internal quotation marks omitted) (quoting *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014)).

### a. Relatedness

Mr. Madden's claims relate to Rittal's in-state activities because Rittal's primary activity in Rhode Island is its work performed by Mr. Madden. All that is necessary to establish this element of specific personal jurisdiction is for Mr. Madden to show that there was a sufficient nexus between his claim and Rittal's activities in Rhode Island. *Ticketmaster*, 26 F.3d at 206. Demonstrating this nexus requires that there be "cause in fact (i.e., the injury would not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)." *Massachusetts Sch. of Law v. Am. Bar Ass'n*, 142 F.3d 26, 35 (1st Cir. 1998) (quoting *United Elec., Radio & Mach. Workers*, 960 F.2d 1080, 1089 (1st Cir. 1992)) (citing *Ticketmaster*, 26 F.3d at 207). To the contrary, Rittal claims that it has never had a business location in Rhode Island, does not regularly sell goods "on a continuous and systematic basis" in Rhode Island, and does not have a Rhode Island mailing address or telephone number. ECF No. 14 at 9-10.

By creating and maintaining an employment relationship with Mr. Madden—who is a resident of Rhode Island—Rittal has created a contact with the state of Rhode Island. But for Rittal's hiring of Mr. Madden in Rhode Island, he would not have experienced the alleged discrimination. And it is Rittal's employment decisions about Mr. Madden, while he was living in Rhode Island, that "gave birth" to the alleged age discrimination that he claims. *See* ECF No. 19, Ex. 3 at 5, ¶ 39. Rittal conducted business across the east coast by allowing Mr. Madden, as its agent, to be

based out of Rhode Island. *Id.* at 3-4, ¶ 29. In representing Rittal, Mr. Madden alleges that he carried a Rittal business card, which shows a Rhode Island address. *Id.*, Ex. A. Mr. Madden also alleges—and Rittal does not dispute thus far—that Rittal engaged in several communications with him while he was in Rhode Island. *See id.*, Ex. 3 at 4, ¶ 33. On at least one occasion, Mr. Madden even met with a Rittal agent in-person in Rhode Island. *Id.* at 5, ¶¶ 37-38. Moreover, Rittal sent all the necessary office equipment to perform his job to Mr. Madden's Rhode Island residence. *Id.* at 2, ¶ 15. On top of all that, Rittal maintained an authorized distributor in the state, with which Mr. Madden collaborated in-person on Rittal's behalf. *Id.* at 4-5, ¶¶ 35-37. Finally, in response to the affidavit of Rittal's Chief Financial Officer, Mr. Madden produced several documents—which are more fully fleshed out in the following section—in support of his position. *See* ECF No. 19, Exs. 1-3, A-G. While many of these documents predate the allegations, and are thus not probative, the remaining documents do provide evidence in support of the plausibility of Mr. Madden's allegations to survive the motion to dismiss stage. *See id.*, Exs. A-G. All these facts are sufficient to demonstrate the nexus between Rittal and Rhode Island.

          **b.**    **Purposeful Availment**

Rittal has purposely availed itself "of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws"— *Bluetarp Fin., Inc. v. Matrix Constr. Co.*, 709 F.3d 72, 82 (1st Cir. 2013) (internal quotation marks omitted) (quoting *Hannon v. Beard*, 524 F.3d 275, 284 (1st Cir. 2008))—because it has done more than make *de minimis* sales through a passive

website or employ a single person who happens to reside in Rhode Island. *Contra* ECF No. 14 at 11. Purposeful availment requires two conditions to be met: voluntariness and foreseeability. *Baskin-Robbins*, 825 F.3d at 36 (citation omitted). Voluntariness means "that the defendant's contacts with the forum state proximately result from actions by the defendant himself." *Id.* (emphasis in original) (quoting *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 28 (1st Cir. 2008)). Foreseeability means "that a defendant's contacts with the forum state are such that [the defendant] could reasonably anticipate being haled into court there." *Id.* (alteration in original) (quoting *Adelson*, 510 F.3d at 50).

Most prominently in support of these conditions, Mr. Madden produces an online record of workers compensation insurance coverage in Rhode Island that Rittal purchased while listing a Rhode Island business address. *See* ECF No. 19, Ex. E. Surely for a company to purchase insurance in a state means that it has concluded that it might carry significant liability in that state, of which appearing in that state's courts is undoubtedly a natural and foreseeable consequence. *See Baskin-Robbins*, 825 F.3d at 36. Never mind the fact that this documentation directly refutes Rittal's claim that it never maintained a Rhode Island address. *See* ECF No. 14 at 11. Mr. Madden also produced his Form W-2 for the year 2021, which shows Rhode Island tax withholdings by Rittal and demonstrates that Rittal had a Rhode Island tax ID. ECF No. 19, Ex. D. Mr. Madden further alleges that Rittal must have been a registered employer with Rhode Island. *Id.*, Ex. 3 at 3, ¶ 22. Lastly, Mr. Madden alleges that all the communications that are relevant to his claims happened by

telephone or Zoom meeting while he was at his Rhode Island residence. *Id.* at 15-16. Rittal thus voluntarily chose to employ Mr. Madden—with all that entailed—and conduct business with him in Rhode Island. These actions are, therefore, sufficient to constitute Rittal's purposeful availment of Rhode Island.

   c. **Reasonableness**

The Court's exercise of jurisdiction is reasonable, and thus "does not offend traditional notions of fair play and substantial justice." *Baskin-Robbins*, 825 F.3d at 35 (internal quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Reasonableness is assessed under the *Gestalt* factors, which are:

> (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.

*Sawtelle v. Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Because Rittal does not maintain operations in Rhode Island, it would bear the burden of forcing its agents to travel to defend the company in this Court. *See* ECF No. 14 at 14. Although, the contrary rule would be that, despite being permitted to work remotely, Mr. Madden would be forced to travel several states away to vindicate his rights under Federal law. Additionally, the alleged harm—Rittal's adverse employment actions against Mr. Madden—was directed toward Mr. Madden in Rhode Island, even though the origin might have been elsewhere. Rhode Island thus has an interest in the matter. Moreover, Rittal proffers no support for its statement that "judicial economy would be better served in a

jurisdiction where a substantial portion of the conduct occurred, which is not Rhode Island." *Id.* (citation omitted) As discussed, Mr. Madden suffered the alleged harm because of Rittal's contact with him, which overwhelmingly occurred while he was in Rhode Island. Further, as Rittal notes, "the most prominent policy implicated here is the ability of a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors." *Id.* Accordingly, Rhode Island should be able to provide a forum for its resident, Mr. Madden, to seek redress against a company that voluntarily chose to employ him, which entailed meaningful contacts with the state while he was living in the state. While caution is warranted in not reducing the requirements of specific personal jurisdiction to a meaningless formality, this case presents no such concern. There is more to this story than Rittal's just happening to employ one individual in Rhode Island. The Court's exercise of jurisdiction over Rittal is therefore reasonable.

### B. Subject-Matter Jurisdiction

Alternatively, Rittal argues that the Court lacks subject-matter jurisdiction over the Rhode Island Fair Employment Practices Act ("FEPA") claim[2] because Rittal does not meet the definition of an "employer" under the state statute. *See* R.I. Gen. Laws § 28-5-6(8)(i) (West 2022). Rittal argues that FEPA requires that a person

---

[2] Rittal argues for the dismissal of both state-law claims—*see* ECF No. 14 at 15—but the provision requiring a minimum number of employees does not appear in the Rhode Island Civil Rights Act ("RICRA"). *Compare* R.I. Gen. Laws § 28-5-6(8)(i) (FEPA), *with Id.* § 42-112-1 (RICRA). RICRA's one reference to this FEPA definitional provision is to define "age" and "sex," not an "employer." *Id.* § 42-112-1. Accordingly, Rittal's argument is entirely unfounded with respect to RICRA, and thus merits no further consideration.

employ four or more individuals *in the state of Rhode Island* to qualify as an employer. ECF No. 14 at 16. Because the Court is unaware of any cases construing this language of FEPA, it must engage in its own statutory construction under the principles set forth by the Rhode Island Supreme Court. Under Rhode Island law, "[i]t is well settled that when the language of a statute is clear and unambiguous, [the] Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Alessi v. Bowen Ct. Condo.*, 44 A.3d 736, 740 (R.I. 2012) (quoting *Waterman v. Caprio*, 983 A.2d 841, 844 (R.I. 2009)). Additionally, "[w]hen interpreting a statute, [the Court's] ultimate goal is to give effect to the General Assembly's intent. The best evidence of such intent can be found in the plain language used in the statute." *Martone v. Johnston Sch. Comm.*, 824 A.2d 426, 431 (R.I. 2003) (internal citation omitted).

Puzzlingly, these principles of statutory interpretation, on which Rittal purports to rely, counsel against its reading of the statute. *See* ECF No. 14 at 15-16 (citing cases). FEPA states that "'Employer' includes ... *any person in this state employing four (4) or more individuals*, and any person acting in the interest of an employer directly or indirectly." R.I. Gen. Laws § 28-5-6(8)(i) (emphasis added). The language most naturally reads: "any person in this state" who employs at least four individuals. The language does not most naturally read "any person in this state" who employs at least four individuals *in this state*. Rittal is thus seeking to include words that are not written into the statute. *See Olamuyiwa v. Zebra Atlantek, Inc.*, 45 A.3d 527, 536 (R.I. 2012) (alterations in original) (citations omitted) ("It is

axiomatic that '[w]here there is no ambiguity, [this Court is] not privileged to legislate, by inclusion, words which are not found in the statute.'"). The language is clearly intended not to cover any employer regardless of its location—hence the "in this state" language. But that language directly follows the "any person" (i.e., any employer) language. It would be a stretch to then read the "in this state" language as also modifying the "four (4) or more individuals" language, at least without further context suggesting that the Rhode Island legislature intended that meaning. If the Rhode Island legislature had intended such meaning, it would have—or at least should have to avoid being construed otherwise—phrased the statute differently. Moreover, the statutes construed in the cases to which Rittal cites read entirely differently than FEPA, and thus are irrelevant here. *See* ECF No. 14 at 16-17 (citing cases in other jurisdictions).

Additionally, staff for the Rhode Island Commission for Human Rights ("RICHR")—which, among others, performs the same functions at the state level as the Federal Equal Employment Opportunity Commission—have informally taken the position that an employer need employ only one person in the Rhode Island and have four or more employees total to be subject to FEPA. ECF No. 19, Ex. 1 at 2. While not binding on the Court, RICHR's position is at least probative of the statute's meaning. For all these reasons, the Court finds that FEPA does apply to Rittal. Because FEPA applies to Rittal, the Court can properly exercise supplemental jurisdiction over Mr. Madden's FEPA claims as they are coextensive with his Federal

13

law claims, and thus constitute the same case or controversy under Article III. *See* 28 U.S.C. § 1367(a).

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Rittal's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2). ECF No. 14.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Court Chief Judge

November 18, 2022